In the Matter of James David
HUDDELSTON, Debtor.

Connie D. HUMISTON, Plaintiff,

v.

James David HUDDELSTON, Defendant.

Bankruptcy No. N94–12362.
Adv. No. 95–1011N.

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

April 3, 1996.

Jacquelyn L. Kneidel, Wood, Odom & Edge, Newnan, Georgia, for Plaintiff.

Richard E. Reiter, Jr., Fayetteville, Georgia, for Debtor/Defendant.

### *ORDER*

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Currently before the Court in this matter is the "Complaint to Determine Dischargeability of Debt" of Connie D. Humiston (hereinafter "the Creditor"). This Complaint comes as part of an adversary proceeding, commenced by the Creditor to determine the dischargeability of certain divorce-related debts owed her by James David Huddelston (hereinafter "the Debtor"). It, therefore, gives rise to a core proceeding within the subject matter jurisdiction of the Court. *See*

28 U.S.C. § 157(b)(2)(I). Having conducted a hearing on the matter and having taken the arguments of counsel under advisement, the Court now renders its decision in accordance with the Findings of Fact and Conclusions of Law which follow.

### FINDINGS OF FACT

The Debtor and Creditor married on March 10, 1990. During the term of their union, the Debtor experienced several periods of unemployment, and he consequently looked to his wife for some form of financial assistance. Assistance came in the form of a series of loans made by the wife from Social Security benefits designed to support her one child from a previous marriage. All told, the Debtor took over $7,500.00 in advances from the child's benefit fund.[1]

Shortly thereafter, the Debtor and Creditor separated. Among its other provisions, a May 17, 1993 separation agreement executed by the parties included a requirement that the Debtor repay $7,500.00 of the funds which he had borrowed from the child's benefit funds before July 1, 1996.[2] To cement this provision, a June 8, 1993 final divorce decree incorporated the terms of the separation agreement as part of its conditional mandate.

In the time since his divorce, the Debtor has moved to Lawton, Oklahoma, where he lives off the support of his family. The Debtor has sought employment in his chosen calling as an airline pilot. No such employment opportunity has come to pass, however, and the Debtor has remained substantially unemployed for quite some time.[3] Despite his inability to secure a position with a major airline, the Debtor stays resolute in his desire to keep working within the flight industry.[4] As a result, he has taken a position as flight instructor for a small Lawton, Oklahoma airline company. The Debtor remains employed in that capacity to this day, earning a meager $65.00 per month in salary.[5]

1. The Creditor's first husband, father of the child in question, had died during the term of that marriage, leaving the child entitled to Social Security benefits during her minority. Desiring to provide for her daughter's college education, the Creditor had accumulated some savings from the benefit payments and earmarked them for such a future use. In light of the Debtor's financial distress, however, the Creditor made a series of advances to him which provided both a source of support and funding for certain business ventures in which he had sought to engage. While the exact amount of these loans remains uncertain, it appears that the Debtor took over $12,-000.00 from the child's college fund, substantially depleting any reserves which the Creditor had so accumulated for her daughter.

With the aforementioned funds in hand, the Debtor chose to embark upon a new career, purchasing an extensive stock of archery equipment which he proposed to sell from his home. Ultimately, however, he abandoned this venture after an unknown degree of success. At this time, the Debtor contends that he has no surviving interest in the archery equipment which had formed the business' inventory. Purportedly, over $40,000.00 of the equipment disappeared in a mysterious theft which the Debtor alleged to have occurred in the course of his move to Oklahoma. While he acknowledges that approximately $8,000.00 worth of the inventory still remains in his possession, the Debtor contends that he has no interest in that merchandise because his mother now owns all stock in the underlying company. (Tr. at 17–20).

2. Either by conscious plan or mere coincidence, this time limitation coincided with the daughter's sixteenth birthday, a point at which she would begin to make plans for college following her high school graduation in the spring of 1998.

3. The Debtor did obtain a job in a local retail store. It appears, however, that he either quit this job or was fired after only working there for one month. (Tr. at 13).

4. In addition to his pilot's license, the Debtor has a substantial skill as well as the necessary tools to obtain employment in the areas of welding and sheet metal work. He contends that he actually has attempted to find work in those areas, yet he acknowledges that he would not relish undertaking such labor for a variety of reasons and states that he would much rather remain in the airline industry. (Tr. at 14–17, 21–24, 30–31). Any and all search for welding or sheet metal work which the Debtor has undertaken appears to have been severely limited in scope, never extending beyond the Lawton, Oklahoma city limits. (Tr. at 21–22).

The Debtor also acknowledges that he has the skills and experience to obtain employment in some aspect of the farming industry. (Tr. at 16). Nevertheless, he does not appear to have made any effort to pursue such an employment option.

5. Notwithstanding his lack of any cognizable source of income, however, the Debtor has seen fit to reaffirm the debt on a bass boat as part of his bankruptcy case. At trial, he defended this action, contending that his mother uses the bass boat and that she pays all expenses associated

His mother pays his bills and provides him with food and lodging.[6]

Against this backdrop of financial stagnation, the Debtor has commenced his present Chapter 7 bankruptcy case, seeking to obtain discharge from his soon maturing $7,500.00 debt to his ex-wife. In response, the Creditor has filed the instant "Complaint to Determine Dischargeability of Debt," arguing that 11 U.S.C. § 523(a)(15) creates a presumption of this debt's nondischargeability. Moreover, the Creditor contends that because the Debtor actually has the ability to pay the debt in question and because the benefit of granting discharge would be outweighed by its inequitable consequences, the Debtor may not overcome such a presumption favoring the debt's exception from discharge.

## CONCLUSIONS OF LAW

### I. The Genesis and Interpretational Development of 11 U.S.C. § 523(a)(15).

■ Through the Bankruptcy Reform Act of 1994, Congress augmented the dischargeability scheme governing divorce-related obligations through the creation of a new section.

with its use, including the promissory note which he assumed. (Tr. at 27–28).

6. The nature of this parental support remains the subject of much doubt and speculation. Specifically, the Debtor argues that his mother's support merely represents a loan, all of which he ultimately must repay. To that end, he has included expenses such as a $350.00 rent obligation and a $610.00 monthly payment for a mortgage relating to his domicile, the obligor on which is actually his stepfather rather than himself. Notwithstanding these contentions, however, the Debtor has offered no evidence that his family has made demand upon him for any such payments or that he intends to pay them in the immediate future. In short, the Debtor's obligation to repay the support being given to him by his family appears more moral in nature than contractual.

7. Regarding the general dischargeability of such divorce-related obligations, paragraph (5) of section 523(a) makes the following provision:

(a) a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does

See P.L. 103–394 (enacted on October 22, 1994), at § 304, 108 Stat. 4150 (codified as 11 U.S.C. § 523(a)(15)). In pertinent part, this newly adopted provision states as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(15) not of the kind described in paragraph (5)[7] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continua-

not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement

\* \* \* \* \* \*

11 U.S.C. § 523(a)(5). Thus, as a precursor to any section 523(a)(15) analysis, the Court normally must determine whether the debt in question qualifies as alimony or support, since debts carrying such a support-like character are deemed conclusively and irrefutably nondischargeable by the terms of section 523(a)(5). *Robinson v. Robinson (In re Robinson)*, 193 B.R. 367, 371 n. 1 (Bankr.N.D.Ga.1996) (Drake, B.J.) (examining the interplay between the two sections). In the instant case, however, the Creditor has conceded that the debt owed to her will not qualify for nondischargeability under section 523(a)(5). Thus, the Court need only focus its attention upon the applicability and impact of section 523(a)(15).

tion, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to the spouse, former spouse, or child of the debtor

\* \* \* \* \* \*

11 U.S.C. § 523(a)(15) (1994). Generally speaking, this section has one effect—to make all divorce-related obligations subject to a presumption of nondischargeability. *See Chalkley v. Carroll (In re Chalkley)*, 1995 WL 242314, No. 93–17198 at \*1 n. 1 (9th Cir.1995). In specific application, however, section 523(a)(15) remains a work in progress. Indeed, given the vague and directionless manner in which some of its provisions have been framed, many courts have found section 523(a)(15) to be a quite difficult mandate to implement with any degree of satisfaction.[8] To that end, the Court finds it both necessary and appropriate to survey the most contentious aspects of section 523(a)(15), as well as the degree of success which courts have had in elucidating those grey areas of the provision.

### A. The Applicable Burden of Proof.

 At least in its early stages of application, one key sticking point of the section 523(a)(15) analysis has involved the appropriate burden of proof governing such cases. Fortunately, however, courts appear to have reached a consensus on this question.[9] Under this accepted and best reasoned approach, a creditor bears the initial burden of establishing that the debt owed to it actually arose in connection with a divorce or separa-

---

**8.** Courts variously have described section 523(a)(15) as "a formidable challenge," *Gantz v. Gantz (In re Gantz)*, 192 B.R. 932, 937 (Bankr. N.D.Ill.1996), a piece of legislative "sausage," *Kessler v. Butler (In re Butler)*, 186 B.R. 371, 373 (Bankr.D.Vt.1995), and a provision "clearly in need of legislative remediation and clarification." *Taylor v. Taylor (In re Taylor)*, 191 B.R. 760, 765 (Bankr.N.D.Ill.1996). Primarily, this dissatisfaction appears to arise from the unwieldy and cumbersome manner in which Congress has fashioned the mandate of section 523(a)(15). *See In re Butler*, 186 B.R. at 373 (decrying the unnecessary complication of the section through the use of triple negatives). Nevertheless, these shortcomings serve to compound an already difficult task, under which bankruptcy courts essentially must interpose themselves as federal courts of divorce, in contradiction of a longstanding policy against the assumption of any such role in the marital separation process. *See Collins v. Hesson (In re Hesson)*, 190 B.R. 229, 236 (Bankr. D.Md.1995) (Mannes, B.J.) ("[f]ederal courts are thrust into the business of domestic relations with the advent of § 523(a)(15), a practice previously condemned"); *Silvers v. Silvers (In re Silvers)*, 187 B.R. 648, 648–49 (Bankr.W.D.Mo. 1995) (noting that the section requires bankruptcy courts to reopen the bitter procedure of separation); *see also Ankenbrandt v. Richards*, 504 U.S. 689, 702–04, 112 S.Ct. 2206, 2214–15, 119 L.Ed.2d 468 (1992) (examining a general exception to federal jurisdiction which the Court has recognized in cases dealing with domestic relations); *Rose v. Rose*, 481 U.S. 619, 625, 107 S.Ct. 2029, 2033, 95 L.Ed.2d 599 (1987) (domestic relations properly are a matter of state law regulation).

**9.** Against this backdrop of apparent consensus, two courts have entered votes of dissent. First,

in the course of his *Butler* decision, Judge Conrad has argued that section 523(a)(15) should fall subject to the same rules of procedure which govern the majority of dischargeability actions and, consequently, the divorce creditor must bear the burden of proof in such cases. *In re Butler*, 186 B.R. at 375. With justification, this aspect of the *Butler* decision has received fairly uniform criticism. *See In re Gantz*, 192 B.R. at 934–35; *In re Hesson*, 190 B.R. at 238–39; *Carroll v. Carroll (In re Carroll)*, 187 B.R. 197, 200 (Bankr.S.D.Ohio 1995) (it would be anomalous to place the burden upon the plaintiff).

Registering his own weighty opinion on how the section 523(a)(15) burden should flow, Judge Mannes has contended that the responsibility for going forward and the burden of proof should be bifurcated between the two parties. *In re Hesson*, 190 B.R. at 239–40. Thus, under the *Hesson* approach, if the debtor can show inability to pay the debt, the examination ceases and dischargeability is warranted. *Id.* If, however, the debtor in fact has the capacity to pay the debt in question, then the plaintiff has the burden to show that the detrimental consequences outweigh any benefit which might redound to the debtor if discharge were granted. *Id.* Despite its novelty and well-reasoned presentation, this approach also has become the subject of criticism by other courts. *In re Gantz*, 192 B.R. at 934–35 (nothing in the text of section 523(a)(15) supports the bifurcated approach advanced by the *Hesson* court, and its premise regarding the relative access of each party to proof on each point remains the subject of reasonable dispute). Having found at least some of this criticism to have been well-founded, the Court declines to follow the *Hesson* approach, instead choosing the majority's treatment of the burden issue.

tion agreement. *See In re Taylor*, 191 B.R. at 764. From and after that point, however, the burden of coming forth shifts to the debtor, thereby requiring him to demonstrate either (1) that he lacks the ability to pay the debt in question from income and property not necessary for the support of himself and his dependents, or (2) that the allowance of a discharge would produce benefits exceeding any consequent harm to the Creditor. *In re Gantz*, 192 B.R. at 934; *Florio v. Florio (In re Florio)*, 187 B.R. 654, 657 (Bankr.W.D.Mo.1995); *Hill v. Hill (In re Hill)*, 184 B.R. 750, 753–54 (Bankr.N.D.Ill. 1995); *In re Silvers*, 187 B.R. at 649 (burden of going forward, not burden of proof, shifts to the debtor); *Phillips v. Phillips (In re Phillips)*, 187 B.R. 363, 368–69 (Bankr. M.D.Fla.1995); *In re Carroll*, 187 B.R. at 200.

*B. The Substantive Inquiry Demanded by Section 523(a)(15)(A).*

Inasmuch as they have succeeded in developing a workable burden of proof for section 523(a)(15), courts nevertheless continue to struggle with the substantive analysis demanded by that section and, in particular, the factors of consideration in applying section 523(a)(15)(A)'s "inability to pay" standard. Given its textual similarities to the disposable income test of 11 U.S.C. § 1325(b)(2),[10] courts agree that the mechanics of section 523(a)(15)(A) should bear some resemblance to the accepted application of that section. *In re Phillips*, 187 B.R. at 368–69; *In re Carroll*, 187 B.R. at 200; *In re Hill*, 184 B.R. at 755. Dissimilarities between the two sections, however, have required extensive tailoring of the section 1325(b)(2) standard in

order to make it fit comfortably upon the frame of section 523(a)(15)(A).

One such necessary alteration has required the settlement of a time point at which the debtor's "inability to pay" properly should be measured. Unlike section 1325(b)(2), which specifically directs that such an examination of ability be based upon projected income as measured at the effective date of the plan, *see* 11 U.S.C. § 1325(b), the point of inquiry mandated by section 523(a)(15) appears nebulous at best. Thus, courts have endeavored to determine the best point at which to take a "snap shot" of the debtor's financial abilities. Through a resulting process of evolution, members of the bench have shifted incrementally from espousal of a measurement focusing upon circumstances as of the debtor's filing for bankruptcy to one examining the facts as they exist at the time of trial, moving each time to a different point of inquiry as the inadequacies of its predecessor become apparent. *See In re Carroll*, 187 B.R. at 200 (section 523(a)(15) concerns the relative positions of the parties as of the bankruptcy filing date); *Anthony v. Anthony (In re Anthony)*, 190 B.R. 433, 438 (Bankr. N.D.Ala.1995); *see also In re Hill*, 184 B.R. at 754 ("the appropriate measuring point is the date of the filing of the Complaint"); *Belcher v. Owens (In re Owens)*, 191 B.R. 669, 674 (Bankr.E.D.Ky.1996) (time of trial should govern the court's inquiry). With each such tweak of the "disposable income" standard, however, certain flaws have revealed themselves as endemic to the standard itself. *See In re Taylor*, 191 B.R. at 766 (criticizing each of the aforementioned approaches as failing to account for certain

---

**10.** In pertinent part, section 1325(b) provides:

(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the [Chapter 13] plan, then the court may not approve the plan unless, as of the effective date of the plan—

\* \* \* \* \* \*

(B) the plan provides that all of the debtor's projected disposable income to be received in the three year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received

by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependant of the debtor; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b). Thus, to paraphrase, section 1325(b) mandates that any plan not proposing to pay creditors in full must commit all of the debtor's anticipated "disposable income" for a period of at least a three years. *See e.g., Anderson v. Satterlee (In re Anderson)*, 21 F.3d 355, 357–58 (9th Cir.1994).

necessarily relevant factors); *In re Anthony,* 190 B.R. at 439 n. 6 (questioning the appropriateness of using a standard like that of section 1325(b)(2) as the sole test for determining a debtor's ability to pay pursuant to section 523(a)(15)).

■ Whether measured at the petition date or time of trial, the adopted "snap shot" version of the disposable income test fails to take into account the nature of the analysis at hand—the debtor's "ability to pay" a debt, if that debt is declared nondischargeable. Unlike any analysis under section 1325(b)(2), which actually turns on the ability to make payments in bankruptcy, section 523(a)(15) looks beyond to the debtor's ability to pay after the bankruptcy event. *Collins v. Florez (In re Florez),* 191 B.R. 112, 115 n. 5 (Bankr.N.D.Ill.1995) ("[t]he logical interpretation of the statute must contemplate the ability to pay the nondischargeable obligation over a period of time"). Given this ultimate focus of inquiry, courts must afford at least some consideration to the impact of the debtor's bankruptcy and discharge upon his financial abilities. *Straub v. Straub (In re Straub),* 192 B.R. 522, 528–29 (Bankr.D.N.D. 1996). Indeed, any standard which focuses on the debtor's current financial burden without taking into account the effect of his impending discharge may not be said to properly measure the debtor's ability to pay a divorce-related debt upon its relegation to nondischargeability. *Id.* at 528 (noting that, although he then stood subject to an exten-

sive amount of debt, the debtor before it soon would be receiving a bankruptcy discharge that would leave him nearly debt-free and able to pay his spousal obligations). If nothing else, simple equity, as well as the text and policy of section 523(a)(15), demands a broader inquiry than that based upon a "snap-shot" which fails to take into account impending changes in the scope of the debtor's financial obligations.[11]

Perhaps more importantly, a single-factored "snap-shot" approach that looks only to existing disposable income will do nothing to account for debtors, such as the one currently before the Court, who for whatever reason have underemployed themselves in the near term. *See e.g., In re Florio,* 187 B.R. at 657. When applied to this class of debtors, a "snap-shot" standard would lead to the incongruous result of a discharge being granted despite the debtor's actual "ability" to pay the debt in question. *Id.* Indeed, reliance solely upon a snap-shot approach to section 523(a)(15)(A) would permit debtors to discharge their divorce-related debts, provided they have the foresight to disavow all sources of income sufficiently prior to filing for bankruptcy.[12]

■ In sum, the Court agrees that a "disposable income" analysis similar to that of section 1325(b)(2) should factor into the application of section 523(a)(15). As the developing line of case law and the preceding hypotheticals point out, however, such a sin-

---

**11.** A standard which fails to take into account the impact of a debtor's impending discharge inequitably threatens to provide a windfall at the expense of innocent ex-spouses. *In re Straub,* 192 B.R. at 528–29. Aside from such considerations, however, failure to take into account the effect of discharge upon the debtor's "ability to pay" will provide a discharge to many debtors who in fact have the capacity to pay, a result at odds with the general policy that discharge exceptions relating to marital obligations should be construed in favor of nondischargeability. *Miller v. Gentry (In re Miller),* 55 F.3d 1487, 1489 (10th Cir.1995) (in contrast to the narrow construction generally afforded to discharge exceptions, provisions relating to familial obligations warrant a broad reading).

**12.** Certainly, the policy behind section 523(a)(15) demands something more than a shortsighted inquiry which lends itself to such inequitable

results. "[A] central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'" *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (citations omitted). At the same time, however, a separate equitable policy mandates that any such mechanism for an unencumbered fresh start only should redound to the benefit of those debtors who are unfortunate, yet honest. *Id.* at 286–87, 111 S.Ct. at 659. In its currently advancing form, the snap-shot approach will confound this longstanding policy, allowing dishonest debtors to rearrange their affairs and thereby exploit the discharge provision of section 523(a)(15) by structuring an environment in which they do not have the "ability to pay" the debt in question.

gle faceted inquiry cannot encompass the totality of a court's consideration in applying section 523(a)(15). *In re Florio*, 187 B.R. at 657–58. · By its focus on notions of "ability," section 523(a)(15) casts a broader net of inquiry than that which may be satisfied by a mere examination of existing income and debt.[13]

 Indeed, as an exception to discharge which is based upon the debtor's inability to pay, section 523(a)(15) closely resembles that exception posed by section 523(a)(8),[14] and it should fall subject to a similarly fashioned standard. *In re Straub*, 192 B.R. at 528–29; *In re Anthony*, 190 B.R. at 437; *In re Hesson*, 190 B.R. at 238; *In re Florio*, 187 B.R. at 657. Just as the hardship exception governing student loans demands a multi-factored approach which accounts for the aforementioned concerns, *see Boston v. Utah Higher Educ. Assistance Auth. (In re Boston)*, 119 B.R. 162, 165 (Bankr.W.D.Ark. 1990) (adopting a three-part test advanced in *Pennsylvania Higher Educ. Assistance*

*Agency v. Johnson (In re Johnson)*, 5 B.C.D. 532 (Bankr.E.D.Pa.1979)), so must the standard for section 523(a)(15) encompass a variety of considerations.[15] At a minimum, the Court finds that the text and purpose underlying section 523(a)(15) require it to determine a debtor's "ability" to pay his divorce-related obligations by taking into account:

(1) the debtor's "disposable income" as measured at the time of trial;

(2) the debtor's opportunities for more lucrative employment;

(3) the extent to which the debtor's burden of debt will be lessened in the near term; and

(4) the extent to which the debtor previously has made a good faith effort to fully employ himself and to satisfy the debt in question.

In the same manner that a totality of circumstances has proven the most accurate gauge of a debtor's "ability to pay" his student loans, so must courts give consideration to a debtor's current circumstance, prospect for

---

**13.** If for no other reason, the Court finds such a broader scope of inquiry to be mandated by the unambiguous manner in which Congress chose to frame the first prong of section 523(a)(15) in terms of the Debtor's "ability" to pay. *See* 11 U.S.C. § 523(a)(15). As defined by Webster, that term connotes a party's "physical, mental, financial, or legal *power to perform*." Webster's II New Riverside University Dictionary 66 (3d ed. 1994) (emphasis added). Given the unambiguous manner in which the legislature qualified its provision by such a reference, and the expansively plain meaning which society affords to the term "ability," the Court finds that it must interpret section 523(a)(15)(A) in a manner which considers both his current finances and his potential capacity to pay the debt in question, thereby providing the most accurate gauge of his true "power to perform." *See Pennsylvania Pub. Welfare Dept. v. Davenport*, 495 U.S. 552, 557, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990) (interpretation of any statutory provision must begin with the plain meaning of its language); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) ("[t]he plain meaning of legislation should be conclusive, except in the 'rare case [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters' ") (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

**14.** Regarding the dischargeability of student loan obligations, section 523 provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit . . . unless—

\* \* \* \* \* \*

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8). For a general discussion of this exception and its basis upon the former student's inability to pay, *see* Morris, *When Are Student Loans Dischargeable?*, 1 F & G Bankr. L.Rev. 56 (1989); *see also* Ryman, *Contract Obligations: A Discussion of Morality, Bankruptcy and Student Debt*, 42 Drake L.Rev. 205 (1993).

**15.** There does appear to be a growing consensus that some type of broader analysis must govern section 523(a)(15) and that such a test should resemble that system of inquiry implemented in cases under section 523(a)(8). *See In re Straub*, 192 B.R. at 528–29; *In re Anthony*, 190 B.R. at 437; *In re Hesson*, 190 B.R. at 238; *In re Florio*, 187 B.R. at 657. Somewhat lamentably, however, no court yet has attempted to move this issue from the realm of theory to that of practice by articulating a specific standard for the application of section 523(a)(15).

change, and degree of effort to improve his situation, before concluding that he lacks the "ability" to pay his divorce-related obligations.[16] Absent such an expansive inquiry, no certain conclusion may be had regarding the debtor's true capacity to satisfy those debts which came as a consequence of his divorce.

### C. Section 523(a)(15)(B)'s Alternative Balancing Process.

Even though he has the ability to pay the debt in question, a debtor still may receive a discharge if doing so "would result in a benefit to the debtor that outweighs the detrimental consequences to the spouse, former spouse, or child of the debtor." *See* 11 U.S.C. § 523(a)(15)(B). Through this alternate provision, debtors who fail in contesting their ability to pay under section 523(a)(15)(A) still may proceed to call into question the relative ability of their spouses to absorb a determination of dischargeability. *See Florio*, 187 B.R. at 658; *Carroll*, 187 B.R. at 201. Thus, "if a non-debtor spouse would suffer little detriment from the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the non-debtor spouse or because the non-debtor spouse could easily pay it) the obligation would be discharged," even though the debtor himself might have the ability to pay the obligation. H.R.Rep. No. 835, 103d Cong., 2d Sess. 54 (1994), *reprinted in* U.S.C.C.A.N. 3340, 3363.

 Given the nature of its inquiry, courts hinge the applicability of section 523(a)(15)(B) upon a variety of factors. Specifically, the income and expenses of each party, the nature of the debt in question, and the former spouse's ability to pay all are said to influence the dischargeability of a divorce-related debt under section 523(a)(15)(B). *In re Hill*, 184 B.R. at 755; *In re Carroll*, 187 B.R. at 201; *In re Florio*, 187 B.R. at 658. Such considerations merely present a starting point of inquiry, however, and courts also must give weight to the intangible effect that its finding will have upon each party involved. *In re Taylor*, 191 B.R. at 767 ("result could change in other cases if the evidence showed some horrible non-economic detriment (to health, liberty, or something else of great material value to the non-debtor party)"). Ultimately, therefore, whenever the totality of the circumstances and the equities of the case call for such a result, the Court should declare the debt to be dischargeable, either in whole or in part.[17]

### II. Application of the Section 523(a)(15) Mandate.

 In the instant case, the Debtor certainly lacks the current disposable income

---

**16.** As an example bearing particular relevance to the instant case, those courts interpreting section 523(a)(8) uniformly have held that a debtor may not rely upon his inability to pay a student loan where he underemploys himself by personal choice. *See Melton v. N.Y. State Higher Educ. Serv. Corp. (In re Melton)*, 187 B.R. 98, 102–04 (Bankr.W.D.N.Y.1995) (delineating the difference between inability by choice and that by circumstance); *Fox v. Pa. Higher Educ. Assistance Agency (In re Fox)*, 163 B.R. 975, 982 (Bankr.M.D.Pa. 1993); *Lisanti v. Pa. Higher Educ. Assist. Agency (In re Lisanti)*, 77 B.R. 27, 28 (Bankr.W.D.Pa. 1987) ("[d]ebtor's testimony evidences a less than aggressive employment search, either in his areas of skill or otherwise"); *Fischer v. State Univ. of N.Y. (In re Fischer)*, 23 B.R. 432, 434 (Bankr.W.D.Ky.1982) ("[i]nformed free choice about one's chosen pursuits is to be respected and even encouraged, but not to the extent of the judicial forgiveness of debt because of hardships that are both foreseeable and voluntarily assumed"). Similarly, courts applying section 523(a)(8) have developed a means for factoring the effect of a debtor's discharge into their analy-

sis of his ability to pay the student loans if they are not discharged. *See, e.g., Kraft v. N.Y. State Higher Educ. Serv. Corp. (In re Kraft)*, 161 B.R. 82, 86 (Bankr.W.D.N.Y.1993) ("[n]ow that the other debts are discharged, it is possible to devote any [income] improvement exclusively to her student loan").

**17.** In yet another area of controversy surrounding section 523(a)(15), courts have divided on whether the section mandates an all or nothing determination of dischargeability. *Compare Comisky v. Comisky (In re Comisky)*, 183 B.R. 883, 884 (Bankr.N.D.Cal.1995) (court may issue an order of partial dischargeability when the facts so warrant), *with In re Taylor*, 191 B.R. at 767; *In re Silvers*, 187 B.R. at 649 (debt must be found either nondischargeable or dischargeable in its entirety). Given its conclusion that the debt before it would be completely nondischargeable under either approach, the Court need not address whether section 523(a)(15) permits the entry of such a partial discharge in the course of this particular case.

necessary to pay his $7,500.00 obligation to his former spouse. Notwithstanding that fact, however, he has not produced any evidence that he lacks the *ability* to pay the debt in question. To the contrary, despite his possession of a wide variety of employable skills, the Debtor voluntarily has chosen to limit himself to a position with a projected income of roughly $780.00 per year. In light of the voluntary nature of his underemployment and his failure to pursue more lucrative opportunities, the Debtor cannot now claim entitlement to a discharge based upon his inability to pay his marital obligations.

■ Turning to the applicability of section 523(a)(15)(B), the Court finds that discharging the aforementioned debt would result in a benefit that pales in comparison to the detrimental consequences to his former spouse. As previously noted, the Debtor borrowed the funds in question from an account containing Social Security benefits designed to support the Creditor's daughter after the death of the child's father. As these payments came into her hands, the Creditor had earmarked them for her daughter's college education. It now appears clear that, absent repayment, the child will not be able to attend college following her upcoming graduation from high school.

Given these overwhelming considerations, the Court finds it clear that the entry of a discharge would cause substantially more harm than good. Consequently, the Debtor has failed in his pursuit of a discharge pursuant to section 523(a)(15)(B), just as he has faltered in showing his inability to pay under section 523(a)(15)(A). Having not overcome the hurdle posed by either prong to section 523(a)(15), the Debtor cannot claim any entitlement to a discharge pursuant to that provision.

### Conclusion

The Court having conducted a hearing on the "Complaint to Determine Dischargeability of Debt" of Connie D. Humiston and having given the matters involved therein its careful consideration, it is **ORDERED** that the $7,500.00 obligation owed to that creditor by James David Huddelston is **NONDIS-CHARGEABLE** in bankruptcy pursuant to 11 U.S.C. § 523(a)(15).

**IT IS SO ORDERED.**

### *JUDGMENT*

Judgment is hereby entered for the Plaintiff against the Defendant in the above-styled adversary proceeding in accordance with the Order of the Court entered the 3rd day of April, 1996.