In re John D. HORTON, Debtor.

Megan Caldwell, Plaintiff,

v.

John D. Horton, Defendant.

Bankruptcy No. 99–20846–JDW.
Adversary No. 99–2068.

United States Bankruptcy Court,
S.D. Georgia,
Waycross Division.

June 16, 2000.

Robert M. Cunningham, Brunswick, GA, for Plaintiff.

William S. Orange, III, Brunswick, GA, for Defendant.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on a Complaint Objecting to Discharge filed by Megan Caldwell ("Plaintiff") against Debtor John D. Horton ("Defendant"). This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(J). The Court conducted a trial in this matter on May 25, 2000, and after considering the pleadings, evidence and applicable authorities, enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Defendant filed for protection under Chapter 7 of the Bankruptcy Code on July 21, 1999, after Plaintiff obtained a $50,000.00 judgment against him. Defendant stated in his schedules that his personal property consisted only of wearing apparel, miscellaneous jewelry, two trucks, and a dog. Plaintiff objects to Defendant's discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(4)(A) because Defendant omitted several other items of personal property from his schedules.

Defendant argues that he did not mention some of the items in question to his counsel because he believed them to be worthless. These include a shotgun, two junked trucks, a homemade horse trailer, a saddle, barrel racing equipment, and a $7500.00 account receivable. The junked trucks, the homemade horse trailer, the saddle, barrel racing equipment, and the $7500.00 account receivable probably have no market value as Defendant alleges, and he probably could have exempted any value they might have had if they had been included on his schedules.

Defendant's shotgun has a negligible value of no more than $150.00, and he probably could have exempted it as well if it had been listed and included as an exemption on his schedule of assets. Defendant alleges that he believed the shotgun did not have to be listed because of its minimal value, and because he thought it was not his own personal property. Defendant suggests that because the shotgun was passed down to him through several generations of his family, and because he expects to hand it down to his own heirs, the shotgun is his family's property and not his individually.

Standing alone, Defendant's explanations might explain his omission, but Defendant also used certain inculpatory language in his testimony that the Court must take into account. Defendant explicitly stated that he did not tell his counsel about the shotgun because he thought the shotgun could not be "traced" to him. The factual issue of Defendant's credibility is unquestionably impacted by such a statement.

What is indicated, by Defendant's testimony, is the fact that the matter of the ownership of the shotgun was considered by Defendant prior to the filing of the case. Defendant had exclusive control of the shotgun and believed he had the right to transfer the gun to another family member at some time in the future. In explaining the circumstances of the omission of the shotgun, Defendant reveals a mental process replete with subtleties and fine distinctions, all aimed in a direction opposite to full disclosure. This gun was purposefully omitted for the express purpose of avoiding the complications which might be incurred by full disclosure. It is this calculating state of mind that fully reveals Debtor's misunderstanding of one of the fundamental requirements of discharge in bankruptcy, full, honest, and complete disclosure of all details and circumstances

including property whose ownership, value and relevance to the case may or may not be of significance. Property forgotten for its inconsequential value is easily distinguishable from property purposefully omitted. Defendant confirms by his explanation of this omission the fact that he did not approach the task of disclosing his assets with the requisite spirit of candor essential to the integrity of the bankruptcy process.

Defendant also argues that his discharge should not be denied on account of his failure to list a horse because he reasonably believed the horse was not his property. The Court rejects this argument as contrary to the facts of this case. Defendant's testimony at trial regarding his interest in the horse varied widely. At certain points he testified that he had no ownership interest in the horse, and at other times he referred to the animal as "my horse." While the state of title to the horse is confused, the Court finds that Defendant knowingly and fraudulently omitted the horse from his schedules in hopes of retaining possession of it. He did not omit it because he thought it belonged to someone else.[1]

Defendant originally purchased the horse in 1987 for $800.00 as a gift for a former fiancée in whose name it was registered with the American Quarter Horse Association. After the engagement was terminated in 1988, Defendant's father paid Defendant's former fiancée $800.00, and the former fiancée signed a transfer report authorizing registration of the horse in Defendant's mother's name. However, the registration was never changed, and the horse continues to be registered in the name of Defendant's former fiancée who said in testimony at trial that she had no interest of any kind in the horse.

Though Defendant's mother appears to have an unregistered title to the horse, her title is nominal at best. She, too, seems to have nothing to do with the horse. Defendant exercises the unrestricted right to utilize and dispose of the horse. Neither Defendant's mother nor any other person appears to have any willingness or right to interrupt Defendant's use and enjoyment of the animal.

If the horse's registration had been properly maintained, its market value might presently be between $2500.00 and $5000.00. The confused state of title to the horse diminishes its value considerably, but the horse is still worth $1000.00. Apparently Defendant has no interest in selling the animal, and accordingly, he has no interest in preserving its larger market value as a registered quarter horse. Like the other omitted items of personal property, Defendant probably could have exempted the horse, but he withheld the information his attorney needed to advise Defendant that the horse should be listed as an exemption on Defendant's schedules.

### Conclusions of Law

Because the Court will deny Defendant's discharge pursuant to Section 727(a)(4)(A), this case must be distinguished from the factually similar case of *In re Cutts*, 233 B.R. 563 (Bankr.M.D.Ga.1999) (Walker, J.) cited to the Court by Defendant. In *In re Cutts*, the debtor sold an automobile to his brother when he realized that he could not keep his payments up to date. The debtor's brother obtained a loan to purchase the automobile for the payoff amount, but the debtor, rather than his brother, made the payments on the new loan. All other circumstances pertaining to the vehicle were consistent with the debtor's ownership, as well. *See In re Cutts*, 233 B.R. at 566–67.

When the debtor filed his bankruptcy petition, a creditor objected to his discharge because he did not schedule the

---

1. Even if the horse was owned by someone else, it should have been listed in response to question 14 in the statement of affairs as "property owned by another person that debt- or holds or controls." Debtor/Defendant's exclusive control over the property was unquestioned.

automobile as an asset. The evidence was sufficient to make out a prima facie case for denial of the debtor's discharge pursuant to Section 727(a)(4)(A). This Court found, however, that the debtor's omissions did not constitute a false oath warranting such denial.

■ Section 727(a)(4)(A) provides for denial of discharge to a "debtor [who] knowingly and fraudulently, in or in connection with the case made a false oath or account[.]" 11 U.S.C. § 727(a)(4)(A). This Court has stated that "[a]n omission from a debtor's schedules can constitute a false oath ... if such omission 1) was made knowingly and with fraudulent intent, and 2) was material to the bankruptcy case at issue[.]" *In re Cutts*, 233 B.R. at 572 (citing *In re Chalik*, 748 F.2d 616, 618 (11th Cir.1984)).

In *In re Cutts*, the Court held that though the creditor made a prima facie case for denying the debtor's discharge, the debtor was able to overcome the first element of the creditor's prima facie case by convincing the Court that his omissions were not deliberate or fraudulent. *See In re Cutts*, 233 B.R. at 572. In *In re Cutts*, the Court had the opportunity to observe the debtor, and to hear him explain his omissions. The Court found the debtor's explanations credible and held accordingly that the facts did not warrant denial of the debtor's discharge. *Cf. In re Chalik*, 748 F.2d at 619 (debtor must overcome prima facie case for denial of discharge with convincing explanation of conduct).

■ Likewise, the Court has exercised its duty as finder of fact in this case. The Court has heard Defendant explain his omissions, observed Defendant's demeanor, and determines that in this case Defendant's explanations are not credible. The Court finds that Defendant knowingly and fraudulently omitted items of property from his schedules in order to avoid losing them in these proceedings. While his concern may have been unfounded, it nevertheless motivated him to conceal the assets from his attorney.

■ Defendant further argues that his omissions were not material, and thus, that they do not meet the second requirement for denial of discharge. The gravamen of Defendant's argument appears to be based on a misunderstanding of the term "materiality" as it is used in the present context. In *In re Chalik*, the Eleventh Circuit stated that "[t]he subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the [bankruptcy] ... estate[.]" *In re Chalik*, 748 F.2d at 618. All items in question in this case bear a relationship to the estate because each item was properly property of the estate. Defendant's estimate that the items were of no value has no bearing on his creditors' rights "to judge for themselves what will benefit, and what will prejudice, them." *Id.* Furthermore, even if Defendant could have exempted all of the items in question from the estate, the fact that they would have been of no benefit to the estate is not relevant to the question of materiality. The question at issue is not whether the omitted items would have been material, or substantially valuable, to the estate, but whether the omission itself is material to the case.

■ The omission of an exemptible item of property is material to the case because debtors are not automatically entitled to any particular exemption. Defendant had the right to claim exemptions pursuant to Section 522, but he had to follow the procedure specified in Federal Rule of Bankruptcy Procedure 4003(a). This rule, requiring debtors to list their claimed exemptions on their schedules of assets, compliments the rights of creditors to review claimed exemptions and, if appropriate, object to them pursuant to Rule 4003(b). In asking the Court to condone his omissions, Defendant effectively asks the Court to negate his creditors' rights to object to his claimed exemptions.

*Conclusion*

Defendant made material omissions of certain items of personal property from his schedules, and he did so knowingly and fraudulently. Accordingly, his discharge will be denied pursuant to Section 727(a)(4)(A).