**In re David W. SMITH, Debtor.**

**Candy Royer, Plaintiff,**

v.

**David W. Smith, Defendant.**

**Bankruptcy No. 00–10389–JDW.**
**Adversary No. 00–1017–JDW.**

United States Bankruptcy Court,
M.D. Georgia,
Albany Division.

July 19, 2001.

---

Joe H. Kimmel, III, Camilla, GA, for Candy Royer.

Danny C. Griffin, Colquitt, GA, for David W. Smith.

## *AMENDED MEMORANDUM OPINION*

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter came before the Court on a Complaint to Prevent Discharge filed by Candy Royer ("Plaintiff") against David W. Smith ("Debtor") pursuant to 11 U.S.C. §§ 727(a)(2), (a)(4), and 523(a)(15). The Court held a trial on February 2, 2001, and entered an order accompanied by a memorandum opinion on June 15, 2001. This opinion revises and replaces the previous opinion so as to clarify the Court's reliance on the Eleventh Circuit case of *Chalik v. Moorefield,* 748 F.2d 616 (11th Cir.1984), regarding burden of proof issues. The Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### *Findings of Fact*

At some point prior to 1996, Candy Royer ("Plaintiff") married David W. Smith ("Debtor"). During their marriage, Debtor lost his job and decided to open his own automobile body repair shop. Debtor fell behind on the payment of expenses related to this business. As a result, Debtor took out a loan from the Bank of Early County and used two certificates of deposit ("CDs") valued at $30,000, gifted to Plaintiff by her grandmother, as security for the loan. Plaintiff did not object to the use of the CDs to secure the loan. Subsequently, on October 2, 1996, Plaintiff and Debtor divorced.

The divorce was finalized by the Final Judgment and Decree entered by Chief Judge Thad W. Gibson in the Superior Court of Early County. In that decree, Debtor was required to pay all interest and principle on the Bank of Early loan within five years, after which time the CDs used to secure the loan would be returned to Plaintiff as her sole property. However, Debtor had much difficulty in complying with the decree and had, on at least one occasion, been held in contempt of court and jailed for his failure to comply.

In February of 2000, due to his inability to keep current with the rental payments for the property where his shop was located, Debtor was forced to vacate the property and remove all his belongings. Consequently, Debtor sought and found hourly employment.

On March 28, 2000, the eve of another contempt hearing regarding nonpayment of the Bank of Early loan obligation, Debtor filed a Petition for Chapter 7 Bankruptcy. Debtor submitted his first set of schedules on May 17, 2000. In these schedules, Debtor failed to list numerous items of personal property such as a blown vehicle engine, automobiles used solely for spare parts, miscellaneous car parts, nonfunctioning paint guns, a gold necklace, an arrowhead collection, and his clothes. Debtor also failed to list various items that he was holding for other persons.

Debtor testified at the 341 Meeting of Creditors on June 21, 2000, that he believed his schedules to be correct. Sometime after that meeting, Debtor became aware that he owned an interest in an option contract he had entered into on August 4, 1995, to buy a home. Debtor amended his schedules on July 3, 2000, adding this interest, but omitted the $3,250 to which he was entitled under the terms of that contract.

Plaintiff filed her Complaint to Prevent Discharge on July 10, 2000, alleging failures to list property and incorrect testimony as grounds for denial of Debtor's discharge. Debtor filed a second set of amendments that were received the day before trial in which he included many, but not all, of the items omitted from his original schedules.

### Conclusions of Law

■■■ The Bankruptcy Code's discharge provisions contained in 11 U.S.C. § 727 enable an insolvent debtor to make a fresh start and enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Dawson v. Cutts (In re Cutts)*, 233 B.R. 563, 569 (Bankr.M.D.Ga.1999)(internal quotes omitted). However, in an effort to ensure that only the honest debtor receives the benefit of a fresh start, both Section 727 and Section 523, provide exceptions to the discharge provisions. These exceptions are to be liberally construed in favor of the debtor, given the harsh and extreme nature of their consequences. *Id.*

### Section 727(a)(2)(B)

■■■ Plaintiff's first objection to Debtor's discharge is made pursuant to Section 727(a)(2)(B).[1] The pertinent part of the section states:

(a) The Court shall grant the debtor a discharge, unless—

. . . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor [has concealed]—

. . . . .

(B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(B) (West 1994). For Plaintiff to establish a prima facie case on this claim, she must show: (1) there was a concealment; (2) after the date of Debtor's filing for bankruptcy; (3) of property belonging to the bankruptcy estate; (4) by the debtor with the subjective intent at the time of concealment to hinder, delay, or defraud his creditors. *Cutts*, 233 B.R. at 570. Thereafter, Debtor must come forward with an explanation for the concealment that convinces a judge. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir.1984). Because the Court feels that whether Debtor actually intended to hinder, delay, or defraud his creditors is dispositive of the matter, the Court will not address the sufficiency of the evidence as it pertains to the remaining factors.

■■■ For purposes of Section 727(a)(2), constructive intent is insufficient to establish the intent element and actual intent must be shown. *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 306 (11th Cir.1994). However, because the debtor is unlikely to admit to fraudulent intent, actual intent may be inferred from the surrounding circumstances. *Hunerwadel v. Dulock (In re Dulock)*, 250 B.R.

---

**1.** Plaintiff's complaint objects to discharge under § 727(a)(2) in general. However, because the evidence was limited to Debtor's alleged concealment of assets not listed in his schedules, the Court will restrict its analysis to § 727(a)(2)(B).

147, 153 (Bankr.N.D.Ga.2000). One wrongful act or omission may be sufficient to establish this actual intent, and a pattern of wrongful behavior is evidence all the more strong. *In re Sowers,* 229 B.R. 151, 157 (Bankr.N.D.Ohio 1998). However, any evidence that a debtor was "ignorant in his actions will tend to negate the actual intent to defraud as long as the debtor did not act with reckless indifference to the truth." *Id.*

In light of this authority, the disparity reflected in Debtor's original schedules as compared to his two subsequent amendments establishes Plaintiff's prima facie case that Debtor fraudulently concealed assets from his creditors. Thus, the burden shifts to Debtor to satisfactorily explain his conduct. After observing Debtor's demeanor and listening to Debtor's testimony, this Court finds that Debtor lacked the actual intent to conceal assets in an attempt to defraud his creditors.

Debtor testified that many items such as the blown vehicle engines, the miscellaneous car parts, and non-operative paint guns were junk and had no value. Though this is not a defense to his failure to list such assets in his bankruptcy schedules, it is a circumstance to consider in determining whether a debtor had the actual intent to conceal assets in an attempt to defraud his creditors and whether he withheld information that might mitigate any loss. *See Cutts,* 233 B.R. at 573. In this limited context, the obvious worthlessness of these omitted items strongly suggests

that Debtor had no intention of defrauding his creditors. A fraudulent concealment potentially results in a benefit to a debtor by retaining the property otherwise required to be surrendered to the Trustee. However, Debtor's "concealment" would not result in any gain from retention of otherwise defunct property.[2] Therefore, Debtor's failure is simply evidence that he was not fully cognizant of the schedules that he signed, or of the disclosure requirements of those schedules.

A further indicator that Debtor did not intend to defraud his creditors is that events occurring in the months following his filing for bankruptcy detracted Debtor from a more conscientious effort at fully satisfying the disclosure requirements of the bankruptcy schedules. The bankruptcy case followed a bitter divorce and a recent history of unstable employment. Based on this testimony and evidence provided by Debtor, the Court finds that Debtor lacked the actual intent to defraud his creditors.[3]

### Section 727(a)(4)(A)

■ Plaintiff further seeks to prevent Debtor's discharge pursuant to Section 727(a)(4)(A) which reads in pertinent part:

> (a) The Court shall grant the debtor a discharge, unless—
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case—

---

**2.** Many of the items allegedly "concealed" by Debtor were depicted in photographs in a state of abandonment around Debtor's residence. The photographs exhibited to the Court as evidence of concealment demonstrated that the property was at all times located in plain view of anyone who would drive by Debtor's home.

**3.** The Court is cautious of its ruling and is disinclined to suggest that a debtor is safe-

guarded from non-dischargeability under § 727(a)(2) for failing to list assets simply for lack of knowledge, failure to read the bankruptcy schedules, or by relying on ineffective counseling from his attorney. Rather, the extraordinary circumstances of this case lend barely sufficient credibility to Debtor's explanation for his omissions to avoid a denial of discharge.

(A) made a false oath or account[.] 11 U.S.C. § 727(a)(4)(A) (West 1994). Plaintiff claims that the items omitted from Debtor's schedules constitute a false oath and that Debtor's discharge should be denied. In addition, Plaintiff asserts that at the 341 Meeting of Creditors, Debtor's testimony reaffirming the correctness of his schedules constituted an additional false oath, also compelling denial of Debtor's discharge.

 In a prior decision, this Court has held that an omission from a debtor's bankruptcy schedules can constitute a false oath under Section 727(a)(4) when the omission: (1) was made knowingly and with fraudulent intent, and (2) was material to the bankruptcy case at issue. *Caldwell v. Horton (In re Horton)*, 252 B.R. 245, 248 (Bankr.S.D.Ga.2000). The initial burden of proving this exception to discharge is on the party objecting to the discharge. However, once the prima facie case is made, the burden shifts to the debtor to explain his conduct by a quantum of reliable evidence sufficient to "convince the judge." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984). Specifically, a creditor establishes a prima facie case under this section by demonstrating that there were items not disclosed in a debtor's bankruptcy schedules. *Cutts*, 233 B.R. at 572. Once the creditor establishes this, the burden shifts to the debtor to demonstrate that the omissions were not made knowingly and fraudulently. *Id.* As previously noted,

fraudulent intent can be inferred from the circumstances surrounding Debtor.

The evidence produced at trial shows that Debtor omitted items from his bankruptcy schedules. The evidence also indicates that Debtor was careless in reporting his property holdings to his attorney and careless in answering questions as to whether his schedules were correct.[4] Evidence does not, however, show that he made a false oath with fraudulent intent. In fact, evidence indicates that Debtor was not adequately interrogated by his attorney in the preparation of his schedules. Such reliance on an attorney can, with other evidence, demonstrate a lack of actual intent. *Parnes et al. v. Parnes (In re Parnes)*, 200 B.R. 710, 715(Bankr.N.D.Ga.1996). Based on this evidence and the evidence noted above as to the Section 727(a)(2)(B) claim, this Court finds that Debtor lacked the actual fraudulent intent to warrant a denial of discharge under Section 727(a)(4)(A).[5]

## Section 523(a)(15)

 Plaintiff attempts to prevent Debtor's discharge by invoking the nondischargeability provision of Section 523(a)(15). The relevant portion of the statute states:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> . . . . .

---

4. It would be convenient to hold all debtors to the same standard for accuracy and full disclosure. The issue is seldom considered by the courts because the requirements of the schedules are sufficiently plain, that any attorney who diligently seeks to assist a debtor will easily succeed in eliciting accurate and complete disclosure from an honest debtor. If, as in this case, the attorney is not diligent, the schedules are prone to be insufficient. The questions posed by the schedules are plan enough that a diligent debtor could also be guided to a successful completion. But the matter of expecting a debtor to be diligent when a lawyer is careless and inattentive is a dangerous requirement.

5. Because the intent element is not satisfied, this Court need not address whether the omitted assets were material to the bankruptcy case at issue.

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or ... divorce decree or other order of a court of record ... unless—

(A) the debtor does not have the ability to pay such a debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor ... or

(B) discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to a ... former spouse ... of the debtor

11 U.S.C. § 523(a)(15) (West 1994).[6] Section 523(a)(15) has the effect of making all divorce-related obligations that are not in the nature of maintenance or support, subject to a presumption of non-dischargeability. *Humiston v. Huddelston (In re Huddelston)*, 194 B.R. 681, 685 (Bankr.N.D.Ga. 1996). Analysis under Section 523(a)(15) begins with the burden on the creditor to establish that the debt obligation owed to her was incurred by the debtor in connection with a divorce proceeding and that it is not in the nature of maintenance or support to be governed under Section 523(a)(5). *Feldmann v. Feldmann (In re Feldmann)*, 220 B.R. 138, 144 (Bankr. N.D.Ga.1998).

Neither party argued the debt in question was in the nature of maintenance or support to be analyzed under Section 523(a)(5), nor did either party contest that this debt was incurred in connection with a divorce proceeding. The Final Judgment and Decree states: "The [Debtor] assumes and agrees to pay the joint obligations of the parties, principle and interest, within a period of five (5) years from the date of this judgment. Upon said indebtedness being paid in full, the CDs of the bank securing said indebtedness shall be released to the [Plaintiff] and they shall be [Plaintiff's] separate and individual assets." Plaintiff's Ex. K, Para. 7 (as amended).

■ For purposes of Section 523(a)(15), "the 'debt' created by the [divorce decree] and therefore ... non-dischargeable, is the undertaking of a former spouse to pay a past or future obligation of the other spouse, or the couple." *Williams v. Holt (In re Holt)*, 40 B.R. 1009, 1012 (N.D.Ga.1984). Because Debtor assumed the past obligation of the couple pursuant to the Final Judgment and Decree, this Court finds that the debt owed to the Bank of Early County qualifies as a debt for purposes of Section 523(a)(15). Accordingly, Plaintiff has met her initial burden of showing that the debt is one incurred in the course of a divorce proceeding not in the nature of maintenance or support, and the debt is presumed non-dischargeable.

■ Once a plaintiff meets this initial burden, the burden shifts to the debtor to come forth with evidence to prove one of the exceptions noted in Section 523(a)(15) apply: either (A) debtor cannot afford to pay the debt, or (B) the benefit to debtor of the discharge outweighs the detriment suffered by the ex-spouse. *Feldmann*, 220 B.R. at 144; *Humiston*, 194 B.R. at 686. Because the Court finds the later exception dispositive of the issue before it, and because the statute is structured in the alternative, the Court will not engage in an

---

**6.** Section 523(a)(5), incorporated by direct reference within § 523(a)(15), states in pertinent part: (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record ....

analysis of the former exception.[7] *See Dickinson v. Dickinson (In re Dickinson),* Adv. No. 00–4062 (Bankr.S.D. Ga. April 11, 2001)(where court construed statute as structured in the alternative).

■ In making a determination as to whether the discharge should be granted under subsection (B) of section 523(a)(15), the Court's inquiry starts with an examination of the income and expenses of each party, the nature of the debt, and the non-debtor spouse's ability to pay the debt. *See e.g., Humiston,* 194 B.R. at 689; *Cleveland v. Cleveland (In re Cleveland),* 198 B.R. 394, 400 (Bankr.N.D.Ga.1996). Generally, however, courts have considered the totality of the circumstances surrounding the debt, in addition to consideration of the overall equities called for in the case. *Id.*

■ Applying these considerations to the case at hand, the Court finds that discharging Debtor's obligation outweighs the detriment to be suffered by Plaintiff. Though neither party presented evidence addressing the specific elements that the Court should consider, the Court can make reasonable inferences from the evidence presented at trial. *See Dreijer v. Girod Motor Co.,* 294 F.2d 549, 554 (5th Cir. 1961).[8] Plaintiff's previous year's earnings totaled approximately $44,000 and she holds various investments, other than the CDs at issue, totaling $32,490. There was also testimony that Plaintiff owned jewelry valued at $15,000. Plaintiff stated that the interest earned from the CDs was to be used to fund her doctoral education. Though intending to use the principle of

the CDs to purchase a home in the future, presently, Plaintiff pays rent on her home at a rate below the fair market rental value of a comparable property.

In contrast, Debtor was forced to close his auto body shop and vacate the property because his landlord intended to rent to another person. Thereafter, Debtor had difficulty maintaining a steady job. He is currently employed in his third job since his filing for bankruptcy. In fact, Debtor filed for bankruptcy because he was unable to keep his monthly utilities current, despite the income he earned in conjunction with the income of his current spouse.

Based on this information, the benefits of discharge would create considerably more benefit to Debtor than detriment to Plaintiff. Though it may curtail Plaintiff's ability to purchase her own home in the near future and might present an obstacle to the attainment of her doctorate's degree, Plaintiff herself testified that losing the CDs would not force her into bankruptcy. Furthermore, there was no evidence that Plaintiff could not avail herself of her other savings to satisfy these obligations. Though it is regrettable that Plaintiff stands to lose her CDs, especially in light of the fact that Plaintiff used the CDs as collateral to secure a loan to pay Debtor's expenses in a failed business enterprise while they were married, the Court finds that the benefits of a fresh start afforded Debtor by discharge outweigh the corresponding burden to Plaintiff. Having found that Debtor has met

---

**7.** This Court takes notice of the adoption in both the Southern and Northern districts of a four-factor test in determining a debtor's ability to pay under § 523(a)(15)(A). *See Smith,* 218 B.R. at 259 (Bankr.S.D.Ga.1997); *Humiston v. Huddelston (In re Huddelston),* 194 B.R. 681, 688 (Bankr.N.D.Ga.1996). However, the Court need not decide whether to

adopt that standard because it is unnecessary to the resolution of the case.

**8.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted all decisions of the Fifth Circuit Court of Appeals rendered prior to October 1, 1981 as precedent.

his burden under Section 523(a)(15)(B), the Court finds Debtor's $28,669 obligation dischargeable.

An order in accordance with this opinion will be entered on this date.

### AMENDED ORDER

In accordance with the memorandum opinion entered on this date, it is hereby

ORDERED that the Complaint to Prevent Discharge filed by Plaintiff Candy Royer is DENIED.