In re Gary WOODWORTH, Debtor.

D. Desiree WOODWORTH, Plaintiff,

v.

Gary WOODWORTH, Defendant.

Bankruptcy No. 94–15078.
Adv. No. 95–1438.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

July 10, 1995.

John R. Marconi, Akron, Ohio, for Plaintiff.

R. Russell Kubyn, Painesville, Ohio, for Defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This case came on for trial on the 8th day of June, 1995, on Plaintiff's Complaint to Determine Dischargeability of certain debts. Plaintiff and Defendant were married in October of 1992 and divorced August 8, 1994.

This complaint seeks non-dischargeability of certain joint debts, or debts otherwise assumed by Defendant under a Decree of Dissolution of Marriage, pursuant to 11 U.S.C. § 523(a)(15).

This matter falls within this Court's core jurisdiction pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(2)(I).

Title 11 U.S.C. § 523(a)(15) was recently enacted as part of the 1994 Bankruptcy Act effective with regard to cases filed after October 22, 1994. Accordingly, this is a case of first impression in this Court. Further, this Court is not aware of any opinions addressing the substantive provisions of this new section.

Title 11 U.S.C. § 523(a)(15) provides an exception to the discharge for debt

> not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business, or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).

The House Committee's Judiciary Report relative to § 523(a)(15) provides:

> [Section 523(a)(15)] adds a new exception to discharge for some debts arising out of a divorce decree or separation agreement that are not in the nature of alimony, maintenance or support. In some instances, divorcing spouses have agreed to make payments of marital debts, holding the other spouse harmless from those debts, in exchange for a reduction in alimony payments. In other cases, spouses have agreed to lower alimony based on a larger property settlement. If such "hold harmless" and property settlement obligations are not found to be in the nature of alimony, maintenance, or support, they are dischargeable under current law. The nondebtor spouse may be saddled with substantial debt and little or no alimony or support. This subsection will make such obligations nondischargeable in cases where the debtor has the ability to pay them and the detriment to the nondebtor spouse from their nonpayment outweighs the benefit to the debtor of discharging such debts. In other words, the debt will remain dischargeable if paying the debt would reduce the debtor's income below that necessary for the support of the debtor and the debtor's dependents. The Committee believes that payment of support needs must take precedence over property settlement debts. The debt will also be discharged if the benefit to the debtor of discharging it outweighs the harm to the obligee. For example, if a nondebtor spouse would suffer little detriment from the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the nondebtor spouse or because the nondebtor spouse could easily pay it) the obligation would be discharged. The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start.

H.Rep. No. 103–835, 103rd Cong., 2nd Sess. 54, *reprinted in* 1994 U.S.Code Cong. & Admin.News 3363.

The facts of this case reveal two individuals who were married for a short time. No children were born out of the marriage. Upon the dissolution of their marriage, the parties agreed that neither party would pay spousal support to the other. (P.Ex. 2). Neither party sought alimony as part of the dissolution. (P. Cross).

The debts at issue are Household Finance Corp., a consolidation loan consisting of Defendant's premarital debts on which Plaintiff

co-signed ($7,605.00); Merchantile Master-card representing joint debts ($4,600.00); and various medical debts incurred by Plaintiff in an amount of approximately $2,145.00, for which Defendant became responsible pursuant to the Decree of Dissolution and Separation Agreement. (P. Direct; P.Ex. 3).

Defendant is 34 years old. He is unemployed and has been so since about the time of termination of his marriage to Plaintiff. Defendant's unemployment prompted his filing of this petition. Defendant has a high school degree and no additional schooling. He has been an IBM mainframe computer operator for several years. In that occupation he earned, with overtime, $25,000 to $35,000 annually ($11.68 per hour). The evidence showed that he has undertaken a fairly exhaustive search for work in his field but has yet to obtain a position. Meanwhile, Defendant is working at temporary jobs at an average rate of $5.00 per hour. Since January of this year he has earned about $3,000.00, netting about $120.00 to $140.00 weekly. Defendant is not suffering from any disability. Defendant lives with his mother and pays some rent and other living expenses, including food and utilities. He does not own a car, but borrows his mother's or his girlfriend's car, and is responsible for his gasoline usage in such vehicles.

Defendant did receive $6,923.82 shortly before he filed his petition. This was a lump sum settlement of Defendant's 401–K plan with his former employer. The evidence showed that he spent those funds prepetition primarily by buying a car for his girlfriend and on other general living expenses rather than paying off some of the debt scheduled in his petition. Further, some of those expenditures should have been disclosed on the Defendant's schedules but were not. Defendant also owns a collection of plates valued at about $350.00 that was not disclosed on the petition. When asked why such omissions existed in his schedules, Defendant responded that he did not know.

Plaintiff was diagnosed with bilateral carpal tunnel syndrome in 1991 and has been determined to be permanently partially disabled by the Bureau of Workers' Compensation (BWC). (P.Ex. 6). Prior to her disability, Plaintiff had supported herself performing secretarial and clerical services. She can no longer function in that capacity as she cannot perform any repetitive hand motions. Plaintiff recently opened a craft shop wherein she leases space to craftspersons and earns a commission on sales. She has not yet been able to determine whether she is able to make a profit at this venture. Plaintiff is still receiving some payment from the BWC, however, that benefit is undetermined at this time as it is based upon her earnings. Plaintiff lives on her own. She has no assets other than her car on which she is still making payments, furniture and clothing.

Both Plaintiff and Defendant testified that they do not have the funds to pay the subject debts and that if they had to pay such debts they would be unable to provide basic support for themselves. Plaintiff testified that she may be forced to file bankruptcy again if the subject debts are discharged as to the Defendant.

It was undisputed that the medical bills at issue were incurred by Plaintiff while she was married to Defendant and while he was employed and that therefore such bills should be covered by the medical insurance carried by Defendant's former employer. Defendant testified that he had not spoken to his former employer with respect to obtaining payment of the bills and that he had not done anything to prevent Plaintiff from seeking payment of such bills through his former employer's insurer. With respect to her attempts to obtain payment of the medical bills, Plaintiff testified that she had submitted her insurance card to her medical providers and had sent her bills to Defendant.

Plaintiff testified on both direct and cross examination that she had suffered emotional harm due to collection activities on the subject debts. The collection activity consisted of telephone calls. No lawsuits have been filed against her. If lawsuits are initiated, Plaintiff testified that she has no assets from which creditors could collect. Plaintiff also testified that she had to file bankruptcy once before in 1986 following a divorce and had worked very hard to restore her credit rating. Thus, she has further suffered due to

the adverse impact the subject debts have had on her credit rating.

■ This action clearly falls within § 523(a)(15). The debts arise out of a decree of dissolution of marriage. This is not a § 523(a)(5) issue as no spousal support was contemplated by the parties. Pursuant to *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), Plaintiff, as creditor, bears the burden of proof in this adversary proceeding. She must prove her case by a preponderance of the evidence. *Id.*

■ Section 523(a)(15) provides that the subject debt will be non-dischargeable unless one of two tests can be met. The first test permits dischargeability if requiring debtor to pay such debts would cause debtor to expend funds reasonably necessary for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 523(a)(15)(A). Likewise, a debtor engaged in a business is not required to expend funds necessary for the continuation, preservation, and operation of such business. *Id.* Thus, § 523(a)(15)(A) requires a review of Debtor's assets, income and immediate earning potential, and his necessary living expenses, to determine whether there is any excess funds above that needed to meet reasonable maintenance and support of himself and dependents.[1]

■ The evidence showed that Defendant would have to expend funds reasonably necessary for his maintenance and support in order to pay the subject debts. Defendant's testimony was uncontested regarding his employment, income, expenses and assets. Notwithstanding the incidents presented by Plaintiff's counsel regarding Defendant's expenditures of the $6,923.82 shortly before filing on items other than the joint debts and some omissions on the schedules, the Defendant's testimony was credible. Any recovery of the $6,923.82 or the plate collection should inure to the estate, not Defendant, and can-

not be considered in determining Defendant's ability to support himself. Section 523(a)(15)(A) does not call for consideration of omissions on schedules or potential preferences. Rather, these are matters to be considered by the trustee for purposes of collecting assets of the estate for distribution to creditors and to determine if a § 727 action is warranted. Although § 105(a) permits consideration of good faith in most circumstances, the evidence presented was insufficient to substantiate fraud, bad faith or the like.[2]

■ Accordingly, Defendant has met the requirements of § 523(a)(15)(A). This is sufficient to hold the debts dischargeable. Although the evidence also showed that discharging these debts and thereby causing creditors to seek payment from Plaintiff would cause her to expend funds reasonably necessary for her maintenance, § 523(a)(15)(A) does not permit consideration of such factors in determining whether the debts should be discharged.

Because tests under § 523(a)(15) are disjunctive, the Court's inquiry may end here finding in favor of Defendant. The Court will, however, further examine the remaining factor, § 523(a)(15)(B), in light of the fact that this is a case of first impression.

The second test under § 523(a)(15)(B) balances the relative benefit and harm caused the debtor and non-debtor, respectively, of discharging the debt. Both parties to this action are the subject of unfortunate financial circumstances. The balancing test is difficult to apply under these circumstances as the factors do not clearly weigh in favor of Plaintiff or Defendant. Perhaps this is the reason for the disjunctive tests. Review of the House Committee's Judiciary Report suggests consideration of whether "[the debt] could not be collected from the nondebtor spouse or ... the nondebtor spouse could easily pay it". Here, the nondebtor spouse cannot easily pay the debt. It also appears

---

1. Section 523(a)(15)(A) uses the term "income or property of the debtor." This necessarily means exempt property and postpetition income as nonexempt property and prepetition income are property of the estate and cannot be used for debtor's maintenance and support. The term "reasonably necessary for ... maintenance and support" opens the door to reviewing assistance or property available from friends or relatives.

2. Possible omissions were "flagged" by Plaintiff but were not fully substantiated.

that such debt could not be collected from her either. Thus, when the facts of this case are considered in light of the legislative history, the balancing test of § 523(a)(15)(B) favors dischargeability.

For the foregoing reasons, judgment is entered against the Plaintiff and in favor of the Defendant. The debts made subject of this complaint are dischargeable.

IT IS SO ORDERED.