In re Bennie Gerald OWENS, Debtor.

Mary Ann Owens BELCHER, Plaintiff,

v.

Bennie Gerald OWENS, Defendant.

Bankruptcy No. 95–70159.
Adv. No. 95–7021.

United States Bankruptcy Court,
E.D. Kentucky,
Pikeville Division.

Feb. 2, 1996.

Lawrence R. Webster, Pikeville, Kentucky, for plaintiff.

James P. Pruitt Jr., Pikeville, Kentucky, for defendant.

## MEMORANDUM OPINION

WILLIAM S. HOWARD, Bankruptcy Judge.

This matter is before the Court for an opinion following a trial held upon the within adversary complaint. The central question is the dischargeability, pursuant to 11 U.S.C. § 523(a)(15), of certain debts as set forth in a property settlement agreement entered into between the parties on September 6, 1994.

### I.

The defendant, Bennie Gerald Owens, filed a Petition under Chapter 7 of the Bankruptcy Code on March 17, 1995. The Schedules filed at that time indicated debts of $184,048.08 and assets of $38,032.

The parties have entered into certain Joint Stipulations as follows:

"1. The parties have attempted to settle the matter, but the discussion has been fruitless.

2. The plaintiff, Mary Ann Owens, is the former spouse of Bennie Owens, and has filed an adversary complaint against the defendant, Bennie Gerald Owens, on June 13, 1995, for nondischargeability of marital debts said to have been incurred in a Separation Agreement, incorporated into a decree of the Pike Circuit Court in Action No. 94–CI–0128, "Mary Ann Belcher Owens v. Bennie Gerald Owens", entered September 28, 1994. That agreement is attached hereto as Exhibit No. 1.

3. Bennie Owens did, in fact, continue to and has made his child support payments as agreed upon by the Agreement and in the said decree.

4. The divorce decree required the parties hereto to pay debts as follows:

a. Mary Ann Owens assumed the house payment of $1,034.00 per month. The balance on that payment is about $111,000.00.

b. Mary Ann Owens assumed a debt to TransFinancial Bank in the proximate (sic) sum of $57,500.00, with payments of $1,000.00;

c. Mary Ann Owens assumed a debt to the Bank of Ashland in the proximate (sic) sum of $4,600.00;

d. Bennie Owens assumed a debt to TransFinancial Bank, known as the Jeep payment, which required payments of $330.51 through June of 1997. Under the Agreement, if the Jeep were traded off by Mary Ann Owens, to whom it was awarded, he would, instead of paying the bank, pay her for a similar time. That vehicle has been traded off.

e. Bennie Owens assumed a payment to TransFinancial Bank, which has a current balance of $2,269.57, and payments of $155.51 per month.

f. Bennie Owens assumed a payment to the TransFinancial Bank as a demand note, with interest to be paid quarterly, which now has a balance of $5,381.00.

g. Bennie Owens assumed various credit card debts and has paid those. Copies of the checks evidencing his claim to payments are attached as Exhibit No. 2 to the Supplemental Witness and Exhibit List. He made these payments by taking out a $40,000.00 loan with TransFinancial Bank with his mother's co-signature on the same. The parties cannot stipulate as to the full disposition of the $40,000.00, nor that all of the attached checks shown as exhibits to the Supplemental Witness and Exhibit List accurately reflect credit card payments.

5. Bennie Owens did not pay the TransFinancial indebtednesses on the Jeep, nor the other two bank notes totalling $10,850.00.

6. Bennie Owens' claimed monthly budget as shown on Exhibit No. 3 to his Supplemental Witness and Exhibit List styled "Monthly Income and Expenditures". Exhibit No. 4 to his Supplemental Witness and Exhibit List shows his current income and expenditures.

7. Bennie Owens has remarried and relocated to Georgetown, Kentucky, and his current monthly income is shown on Exhibit No. 5 to the Supplemental Witness and Exhibit List.

8. Mary Ann Owens' claimed monthly budget is:

| | |
|---|---|
| Bank of Ashland | $ 889.00/month |
| House payment | 1,093.00/month |
| Personal note | 1,000.00/month |
| Babysitter | 440.00/month |
| Power | 154.00/month |
| Water | 40.00/month |
| School lunches | 40.00/month |
| Television cable | 22.00/month |
| Personal health insurance | 178.00/month |
| Car insurance | 100.00/month |
| Food | 400.00/month |
| Telephone | 32.00/month |
| Child's clothing | 100.00/month |
| School activities | 20.00/month |
| Sewer | 35.00/month |
| Upkeep on child's Tennessee walking horse | 350.00/month |

In addition, Mary Ann Owens has medical expenses for her child.

The present income and expenses of Bennie Owens are said to be shown on the Supplemental Witness and Exhibit List, Exhibit No. 5.

Mary Ann Owens' income for 1994 was $42,748.56. Her gross receipts from January through November of 1994, were $166,067.03. Through a comparable period of January through November, 1995, her gross receipts are $158,533.28, so her income is slightly down from 1994."

With respect to paragraph number 6 of the Stipulations, the attached Exhibit 3 to debtor's Supplemental Exhibit List was a photocopy of Schedule I—Current Income of Individual Debtor(s) and Schedule J—Current Expenditures of Individual Debtor as filed in the debtor's bankruptcy proceeding. Schedule I revealed a gross monthly income of $3,466.67 and a net monthly income of $2,166.67. Schedule J indicated expenditures of $2,712.00 per month, including payments totalling $1,305.00 to TransFinancial Bank which will be discussed hereinafter. Exhibit 4 referred to above (a list of current income and expenses) indicates income of $2,200.00 per month and expenditures of $2,274.00 per month.

As the above Stipulations reflect, the parties hereto had reached a property settlement agreement (the "Agreement") in their proceeding before the Pike Circuit Court. That Agreement, in relevant part, provided as follows:

(5) The Petitioner shall have as her sole and separate property the 1991 Jeep Cherokee and the Respondent shall be responsible for and hold the Petitioner harmless

from the indebtedness owed to TransFinancial Bank on said Jeep, until such time as the Petitioner remarries or said indebtedness is paid in full. Provided however, that in the event the Petitioner sells or trades said Jeep in order to purchase another vehicle, then and in that event the Respondent shall continue to pay the amount of $330.00 on same until the date the Jeep would have been fully paid for, same being the month of June, 1997. The Respondent shall further maintain the current insurance on said Jeep until December 16, 1994. The Respondent shall execute any and all documents necessary in order to effectuate the transfer of said Jeep Cherokee unto the Petitioner.

\* \* \* \* \* \*

(7) The Respondent shall have as his sole and separate property the 1993 Toyota pickup truck and he shall be responsible for and hold the Petitioner harmless from the indebtedness owed on said truck. The Petitioner shall execute any and all documents necessary in order to effectuate the transfer of said truck unto the Respondent.

\* \* \* \* \* \*

(10) The Petitioner shall pay the following: (a) the costs of a babysitter for the parties' child; (b) the utility bills on the home; and, (c) the indebtedness owed to the Bank of Ashland.

(11) The Respondent shall pay the following: (a) the bank notes totalling approximately $10,850.00 owed to TransFinancial Bank; (b) all credit card accounts shall be paid immediately so as to relieve the Petitioner from said credit card accounts.

The Agreement further provided for plaintiff to have custody of the minor child of the parties and that debtor would pay plaintiff $400 per month as child support and provide medical insurance coverage for the child. Plaintiff received the marital residence and assumed the mortgage indebtedness thereon and was required to hold debtor harmless on the mortgage indebtedness. The Agreement divided other personal property and contained general waiver language with respect to any other claims the parties may have had against each other. The Agreement did not award maintenance to either party.

As is indicated in the Stipulations, it appears that the defendant has paid the credit card debts in accordance with paragraph 11(b) of the agreement.

The payments on the Jeep Cherokee, required by paragraph 5 of the agreement, are $330.51 per month and will terminate in June 1997. The testimony established that the plaintiff has since traded the 1991 Jeep vehicle on a similar, later model Jeep Cherokee Laredo and received approximately $8,000.00 to $9,000.00 trade-in allowance. However, since the Agreement contemplated the possibility of the plaintiff trading in this vehicle, the fact of the trade of the old Jeep on a new Jeep has no bearing on the within payment, but will be considered only in connection with § 523(a)(15)(B).

The defendant has remarried and is employed by Toyota Motor Manufacturing U.S.A., Inc. at Georgetown, Kentucky. The testimony and stipulations established that, in order to pay the credit card debts required by the Agreement and, potentially, other debts, defendant borrowed the sum of $40,000.00 from TransFinancial Bank (hereinafter "TransFinancial") with his mother as a co-maker. His mother also granted a mortgage against her home as security for repayment of that debt. While this loan was incurred by the defendant pre-petition, the defendant has apparently reaffirmed the indebtedness and is currently making payments to TransFinancial in the amount of $845.00 per month as is reflected on his monthly budget.

The plaintiff has not remarried. She is a licensed optometrist and is engaged in private practice in Pike County, Kentucky. Apparently the plaintiff also relies upon her relatives for financial help, and received a swimming pool installed at her home as a gift from her aunt and grandmother during the summer of 1995.

## II.

The issues before the Court, pursuant to 11 U.S.C. § 523(a)(15), are whether (1) the payments to TransFinancial (or, alternative-

ly, to the plaintiff if the Jeep was traded as was done here) on the 1991 Jeep Cherokee awarded to plaintiff pursuant to paragraph 5 of the Agreement are dischargeable; (2) whether the payments remaining due to TransFinancial as set forth in paragraph 11 of the Agreement are dischargeable; and (3) if either of the debts is of a kind described as non-dischargeable by the initial language of 11 U.S.C. § 523(a)(15), whether or not such debts should be discharged pursuant to subparagraphs (A) or (B) thereof.

### III.

■ This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). The relevant standard of proof in this matter is by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Woodworth*, 187 B.R. 174 (Bankr. N.D.Ohio 1995).

The relevant Bankruptcy Code section, 11 U.S.C. § 523(a)(15), was enacted as part of Public Law No. 103–394 and signed into law by the President on October 22, 1994. The relevant section now reads:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

&ast; &ast; &ast; &ast; &ast; &ast;

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

A cogent and useful observation about this section has been made by Chief Judge Mannes of the United States Bankruptcy Court for the District of Maryland in *In re Hesson*, 190 B.R. 229, 237 (Bkrtcy.D.Md. 1995):

The use of triple negatives in this subsection has turned an otherwise well intended statute into sausage. A reversal of the exceptions to the exception is in order. For comprehension purposes only, the section can be read to make property settlements nondischargeable only IF a debtor is able to pay those debts or IF a discharge would be too detrimental to the ex-spouse. Congress has decided that if a debtor is able to pay the debt owed to the ex-spouse without harming him or herself more than nonpayment would harm the ex-spouse, the debtor should uphold his or her separation obligation.

Initially, it is necessary to determine if the initial language of § 523(a)(15) is applicable to the debts, that is, are they debts not of the kind described in paragraph (5) that are incurred in the course of a divorce or separation? The plaintiff does not contend that these obligations are of the kind described in § 523(a)(5) but only that they are of the kind described in § 523(a)(15). The question then becomes whether either of these indebtednesses is a debt incurred in the divorce proceeding.

■ The first indebtedness, wherein the debtor was required to make payments to TransFinancial on the loan for the Jeep driven by the plaintiff, contains the significant language "... and hold the Petitioner harmless from ..." with respect to this indebtedness. It appears that this "hold harmless" language is significant in that it appears to be language which creates a new indebtedness, from respondent/defendant to petitioner/plaintiff in this particular case. While it appears that there may be other language which creates a new obligation, the hold harmless language used in this paragraph appears to create a new obligation as con-

templated by the statute. The Court concludes that the Jeep indebtedness is a debt "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement" contemplated by § 523(a)(15) and, unless the defendant is successful in his assertion of the affirmative defenses set forth in subparagraph (A) or subparagraph (B), would be a non-dischargeable debt.

■ With respect to the debts set forth in paragraph (11) of the Agreement, the remaining unpaid debts of which are the notes to TransFinancial totalling $5,650.57, the hold harmless language found in paragraph (5) is conspicuously absent. The absence of the hold harmless language or any other language in this paragraph which could be construed to create a new debt from respondent/defendant to petitioner/plaintiff, leads to the conclusion that this is not a debt "incurred by the debtor in the course of the ... separation agreement". *In re Stegall*, 188 B.R. 597 (Bkrtcy.W.D.Mo.1995). Therefore, the debts described in paragraph (11), to the extent that they remain owing, are not made non-dischargeable by the language of § 523(a)(15).

### IV.

■ Since the Court has determined above that the indebtedness for the Jeep is of the kind described in the opening paragraph of § 523(a)(15), it is now necessary to determine if the affirmative defenses asserted by the debtor pursuant to subparagraph (A) or subparagraph (B) constitute an exception which renders this debt dischargeable. Since these tests are expressed in the disjunctive, if either of them is met the debt should be discharged. *In re Woodworth, supra.*

The defendant's 1994 Form 1040A U.S. Individual Tax Return indicates gross wages of $42,481.00. Based upon the current rate of pay of the defendant, it appears that his gross income in his new employment is approximately $32,400.00 per year. This is consistent with the $2,200.00 net income to which the defendant testified. He claims expenditures in the amount of $2,274.00 per month. The testimony established that the defendant, within the last year, has spent $3,600.00 on jewelry, apparently for his new spouse. These expenditures also include the new debt to TransFinancial (secured by his mother's home) on which the monthly mortgage payment is $845.00. Clearly, but for this payment alone, the debtor could easily afford to make the payments on the Jeep called for under the agreement. The defendant testified that his new spouse is unemployed and is not currently able to work because of medical problems. His budget does not include support for her and the Court assumes for these purposes that she has some separate means of support independent of the defendant.

■■ The wording of § 523(a)(15)(A) is that of § 1325(b), the "disposable income test", and a similar analysis is appropriate. *In re Hesson, supra; In re Hill*, 184 B.R. 750 (Bkrtcy.N.D.Ill.1995). It appears that the appropriate time to measure the ability of the debtor to pay the ostensibly non-dischargeable debt is at the time of trial. *In re Hesson, supra.* Applying the disposable income test to the present circumstances leads the Court to conclude that the Jeep debt should not be made dischargeable by § 523(a)(15)(A) because the $845 monthly payment to TransFinancial, although secured by debtor's mother's house, is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. The irony that the debt to TransFinancial was incurred to pay other dischargeable marital debts pursuant to paragraph 11 of the agreement is not lost on the Court. At the time the agreement was approved by the divorce court, § 523 had not even been amended to include the relevant provisions. The Court holds that the priorities established by Congress in the enactment of § 523(a)(15)(A) elevate the obligation of the debtor to pay the debt created in the divorce agreement above his moral and legal obligation to pay the debt secured by his mother's home.

■ Next the Court must determine if the ostensibly non-dischargeable debt for the Jeep is rendered dischargeable by the second test, § 523(a)(15)(B). This test is a balancing

of interests test where the Court must weigh the benefit and harm to the debtor and non-debtor caused by discharging or not discharging the debt. *In re Woodworth, supra.*

█ The plaintiff's net income for 1994 was slightly over $42,700.00. Because she is self employed, her income varies, and testimony has indicated that her income for January through November 1995, in gross terms, is some $7,500.00 below the comparable period for 1994. The Court does not have the advantage of knowing what her expenses are for 1995 and, in the absence of that information, must assume that the 1994 income information is the best available. The standard set forth in § 523(a)(15) subparagraph (B) that discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the spouse appears to direct the Court to find dischargeability where the assets or needs of the former spouse are such that the addition to his/her income (or reduction of expenses) resulting from the payment in question would be of significantly less benefit to him/her than the detriment to the debtor. Apparently this language is intended to avoid imposing non-dischargeability on a debtor/spouse where the non-debtor spouse has independent means, wealth, or a lack of need of the particular payment involved or, arguably, where the non-debtor spouse has no assets that can be reached by creditors.

The expenses of the plaintiff demonstrate a living standard higher than that of the defendant in these proceedings. For instance, the upkeep on the child's Tennessee walking horse of $350.00 per month appears to be an item which is not entirely necessary to the proper rearing of the child in light of the financial situation of the parties. However, these expenses do not indicate a lifestyle wholly out of keeping with her income and past lifestyle and the disparity between her lifestyle and the debtor's lifestyle is not great.

The payment of the $330.51 per month, will, no doubt, make for a very tight budget for the defendant. Concurrently, if the plaintiff is required to assume this indebtedness and pay it herself, it appears that it will be equally burdensome for her. In reviewing all of the facts in the matter, the Court cannot conclude that discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to his former spouse. Therefore, the Court concludes that the indebtedness to TransFinancial Bank, secured by the Jeep vehicle is non-dischargeable.

A separate Judgment will be entered herein.